CITIZENS STATE BANK OF MOBRIDGE, Respondent, v. ROSENBERGER et al (Inter-state Surety Company,

Appellant.)

(167 N. W. 154.)

(File No. 4164.   Opinion filed March 26, 1918.)

1.  **Vendor and Purchaser—Indian Ward Lands—Conditional Purchase Money Deposit in Bank, Transfer of Credit to Purchaser, Indemnity Bond to Vendor, Liability Under—Defense of Public Policy, Effect—Pleading, Sufficiency.**

A complaint in substance alleged a written contract between one who contracted with another to sell to the latter certain lands owned by Indian wards, that pursuant to Departmental

Rule one-fourth of purchase price was deposited by vendor with plaintiff bank as such advance payment, that it was agreed that if title to and approval of sale of the lands by the Department of the Interior could not be made good within six months, the agreement should be void and deposit money refunded, that vendee requested plaintiff to transfer the deposit to his checking account at the bank, which was done upon vendee's executing, with defendant surety company, an indemnity bond to plaintiff against loss or damage, etc., that vendee defaulted by failing to procure good title to the lands, that thereafter vendor recovered judgment against plaintiff bank for the amount of the deposit, etc. **Held,** that trial court erred in overruling a demurrer to the complaint for failing to state a cause of action; that defendant surety company's defense that the contract of indemnity was void as against public policy because it induces breach of trust on part of the bank, and that the funds were delivered in escrow to the bank for benefit of innocent persons contracting with vendee, is untenable; the complaint not disclosing wrongful intention or fraudulent collusion with vendee concerning the indemnity contract; it not appearing that vendee had no right to receive any part of said deposit so credited to him, while the indemnity bond protected vendor's rights and those who might have been entitled to the deposit; that while vendee and plaintiff might have conspired to defraud the surety company by means of such indemnity contract, the complaint does not so disclose, or that plaintiff bank acted otherwise than in good faith; moreover, all principal circumstances surrounding the deposit are recited in the indemnity contract, thus notifying defendant surety company of what it was doing in executing the contract. **Held,** further, that the actual money went into the general and business funds of the bank, and vendor, and the Department of Interior as guardian of said wards, had a contingent banking credit for said deposit, according to who should eventually be entitled thereto.

**. 2.   Escrow—General Bank Deposit of Purchase Money re Sale of Indian Ward Lands, Whether an Escrow?**

Where, under a contract of conditional sale of Indian ward lands, vendor deposited in bank to the general credit of vendee part of the purchase money, pursuant to rule of Department of Interior that such part payment should be advanced and remitted to agent of the Department, the sale being conditional upon vendor's making good title to the lands, with approval of the Department, within a stated period, in default of which the contract should be void and money refunded to vendor, **held,** that, even though so denominated in the contract, such deposit was not an escrow, to be kept intact sep-

arate and apart from other bank moneys, but was deposited as any other general deposit, and became intermingled with other bank funds; and the bank was not obligated to return the specific money deposited, its obligation being that of debtor agreeing to pay a like sum of money to whomsoever eventually might be entitled thereto under the sale contract.

Whiting, P. J., dissenting.

Appeal from Circuit Court, Walworth County.  Hon. Joseph H. Bottum, Judge.                                                     L

Action by Citizens State Bank of Mobridge, a corporation, against P. B. Rosenberger, and the Interstate Surety Company, a corporation, to recover upon a contract of indemnity.  From an order overruling a demurrer to the complaint, defendants appeal.  Affirmed.

*Sterling & Clark,* for Appellant.

*Pat Morrison,* for Respondent.

(1)   To point one of the opinion, Appellant cited:  9 Cyc. 483; Note 52 in 9 Cyc. 484, and Annotations; Hayes v. Kyle, 8 Allen (Mass.) 300; Civ Code, Sec. 1271, 1960; Timm v. Grand Rapids Brewing Co., 125 N. W. 357; 27 L. R. A. Ns. 186; Allibone v. Ames, (S. D.) 68 N. W. 165, 33 L. R. A. 585; Ives v. Jones, 40 Am. Dec. 421.

Respondent cited:  Greenhood on Public Policy, pp. 1, 14, 15; Byrd v. Hughes, 84 Ill. 174, 25 Am. Rep. 442; Fidelity & Deposit Co. v. Butler, 16 L. R. A. (N. S ) 994; Moss v. Cohen, 36 N. Y. Suppl. 265; 9 Cyc. pp. 470-474.

McCOY, J.   Plaintiff's complaint is in substance as follows: That one Rosenberger and one Charles entered into a written contract whereby said Rosenberger agreed to sell to said Charles certain lands owned and held by Indian wards of the United States government; that the regulations of the Department of the Interior required that one-fourth of the purchase price of said lands be paid in cash and remitted to the authorized agent of the Department of the Interior; that by the terms of said contract for the sale of said land it was agreed that, if title to said lands and the approval of such sales by the Department of the Interior could not be made good within six months from the date of said agreement, said agreement should be void, and that moneys deposited by said Charles for the purpose of making the first payment on said lands should be refunded to him; that under

and by virtue of said contract the said Charles deposited with plaintiff bank $1,100, as the advance payment of one-fourth of the purchase price of said lands; that thereafter the said Rosenberger requested the plaintiff to transfer the said deposit of $1,100 so made by Charles to the checking account of Rosenberger; that plaintiff before transferring the said deposit to the checking credit of Rosenberger required him to furnish indemnity indemnifying plaintiff from any loss or damage on account of the transfer of said funds so deposited to the general checking account of Rosenberger that thereafter, pursuant to said requirement of plaintiff, the said Rosenberger, as principal, and the defendant Interstate Surety Company, as surety, executed to plaintiff their indemnity contract whereby they agreed to save and hold harmless the plaintiff from any loss or damage on account of the transfer of said deposit to the general checking account of Rosenberger; that the said Rosenberger defaulted in the terms of said real estate contract with said Charles by failing within six months, or any other time, to procure good title to any of said lands, and by reason thereof said Charles became entitled to have said $1,100 so deposited refunded to him; that after the expiration of said six months and the failure of said Rosenberger, the said Charles recovered a judgment against plaintiff for the amount of said deposit, together with costs and interest, and that plaintiff expended the further sum of $100 for attorney's fees in defense of said action; and that by reason of the said facts plaintiff has lost and been damaged in the amount of said deposit together with said interest, costs, and attorney's fees.  To this complaint the defendant Interstate Surety Company interposed a demurrer on the ground that said complaint failed to state facts sufficient to constitute a cause of action against said surety company.  From an order overruling said demurrer said defendant appeals.

[1]  It is the contention of appellant that said contract of indemnity is void as being against public policy for the reason that it induced a breach of trust or confidence on the part of said bank; that the funds referred to in the complaint were delivered in escrow to the bank to hold for the benefit of innocent persons contracting with Rosenberger, and were to be turned over to Rosenberger only upon delivery of proper title to the lands.  We

are of the opinion that this contention of appellant is not tenable. There is nothing in this complaint from which it can be inferred that plaintiff had any wrongful intention or in any manner whatever entered into any fraudulent collusion with Rosenberger in relation to the entering into of said indemnity contract. While it does appear that Rosenberger had no right whatever to receive any part of said deposit credited to his general checking account, still, the plaintiff protected the rights of Charles, or others who might have been entitled to said deposit, by requiring Rosenberger to furnish security indemnifying plaintiff from loss by reason of the transfer of said deposit to the account of Rosenberger, and while it is true that Rosenberger and the plaintiff might have conspired to defraud the appellant of the amount of said deposit by means of such indemnity contract, still that is a matter not appearing from the fact of the complaint in question, but might be proper matter to be pleaded by way of answer and be tried out on the trial of the cause.

There is always in every contract of indemnity or suretyship transaction an opportunity for the principal debtor and the person for whose benefit the indemnity contract is made to enter into a conspiracy to defraud the surety; but there is nothing in the transaction set out in the complaint that discloses any such fraudulent conspiracy, or that the plaintiff bank acted otherwise than in good faith. All the principal circumstances of the making of said deposit with plaintiff are recited in the indemnity contract signed by the Interstate Surety Company, which gave said defendant full and complete notice of what it was doing when it entered into said contract of indemnity. The defendant surety company, no doubt received its premium with its eyes wide open to the facts, and by reason thereof is not now in a position to repudiate the validity of the indemnity, in the absence of any showing tending to show fraud or collusion between plaintiff and Rosenberger. When this $1,100 was so deposited by Charles with plaintiff, the actual money went into the general and business funds of the bank, and Charles and the Department of the Interior, as guardian of the Indian wards, had a contingent banking credit for said $1,100, according as to who should be eventually entitled thereto under the contract between Charles and Rosenberger. Upon the giving of the security by Rosenberger

to indemnify the bank from loss by reason of transferring said credit; the said credit was transferred to Rosenberger, and he thereafter drew his checks and caused the same to be paid to him.

[2]   The fact that the contract sued upon and the parties thereto had in contemplation that these advance part payments had been deposited with the bank should at all times be kept in mind in considering this case. If the specific money representing these advance payments had in fact been specifically deposited in escrow to have been kept intact separate and apart from all other moneys of the bank, and the parties to this action had been dealing with respect to money so held in escrow, then there would have been a different proposition confronting the parties and this court, as a different obligation would then have been resting upon the bank; but in this case the money was deposited in the bank the same as any other general deposit and became intermingled with all other moneys of the bank, and there was no obligation resting on the bank to return the specific money deposited, but the only obligation resting on the bank was that of debtor agreeing to pay a like sum of money to whomsoever eventually might be entitled thereto under the contract for the sale of lands. This is the construction that the parties to this action placed upon the deposit of the money with the bank. The money in question never, as a matter of fact, became an escrow, although so denominated. The contracts set out in the complaint indicate a general, and not a special, deposit. A general deposit of money such as was contemplated by the parties to this suit was not in fact an escrow of money, but was nothing more than a general deposit. 5 Cyc. 515; 13 Cyc. 796; Anderson v. Bank, 112 Cal. 598, 32 L. R. A. 479; Mutual Acc. Ass'n v. Jacobs, 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516, 33 Am. St. Rep. 302. We fail to discover any principle of public policy in relation to the giving of the indemnity which permitted Rosenberger to procure the amount of the deposit from the bank. It might as well be said, for all this court knows, that Rosenberger and the surety company conspired to fleece the bank.

The order appealed from is affirmed.

WHITING, P. J. (dissenting). By the express provision of our Civil Code, § 1960, an agreement to indemnify a person

for an act thereafter to be done is void if the act be known by such person at the time of doing it to be unlawful. Respondent says, "It may be readily conceded that, if the bond did in fact induce a breach of trust * * * it would be against public policy and therefore void." Did not the bond induce a breach of trust? It certainly must be presumed that the bank would not have turned the money over to Rosenberger if it had not been for this bond—both parties thereto knew that the purpose of the giving and receiving of this bond was to pave the way for the paying over of this money. But respondent argues that the transferring of the money to Rosenberger was not a breach of trust. Respondent says, "The turning over of the money to Rosenberger did not affect the legal rights or any remedies for enforcing them of the depositors in the least particular, and it was therefore not a breach of trust." In the majority opinion it is said: "When this $1.700 was so deposited by Charles with plaintiff, the actual money went into the general and business funds of the bank." If this were a correct statement, and such money went into such funds rightfully, then there is basis for the conclusion that this undertaking did not induce a breach of trust. Of course it was possible for the parties hereto to have agreed that the money should be deposited in the bank to stand as a deposit payable to such person as should eventually be found entitled thereto, under which deposit the money would have properly been commingled with the other funds of the bank, and the party who ultimately was entitled thereto would have had the same rights, and none other, as other depositors. But that was not this case, and I am unable to find anything in the complaint from which it could be inferred that such was the agreement.

Respondent in its complaint repeatedly alleges that this money was deposited with it in escrow. The deposit was by Charles. While it is an improper use of the term "escrow" to speak of money being so deposited, yet when we consider what an "escrow" is, it is clear that to speak of money being deposited in "escrow" means that such money was a special deposit, the title to the money remaining in Charles, and such money to be delivered to Rosenberger only upon the happening of some event —in this case the tendering of a perfect title to the land. The bank had no right to turn this money over to its own general

fund. Not only does the respondent repeatedly allege that this money was an "escrow," but the bond executed by appellant, and which is the basis of this suit itself, recites that the money was deposited in the bank "to be held in escrow," and speaks of such fund as "deposited in escrow." It seems clear that, if this bank had lived up to its trust and should have happened to have become insolvent before the end of the six months, this particular fund would have been there in the bank to have been taken possession of by Charles, who could have claimed the same as against the general depositors. The legal right of recovery upon this undertaking does not in any manner depend upon whether the depositors actually suffered as a result of what was done, but depends upon the results that might have flowed from what such undertaking contemplated should be done. Therefore, when the undertaking expressly provided that a fund which was held by the bank as a special deposit—rendering the bank a trustee thereof—should be paid over in breach of the trust, the situation is exactly the same as though an agent who had money of his principal in his hands, or an administrator or executor or guardian who had money of an estate in his hands, should be approached by some party having no right to such money with a request that he turn such money over to him with an assurance that he will see that such trustee suffers no financial loss therefrom, and the trustee, being willing to commit a breach of his trust if he feels himself financially protected, says to the tempter, "If you will procure me an undertaking protecting me against loss for breaking my trust, I will then commit a breach of trust and give you the money." Such an undertaking is procured with the full understanding and knowledge on the part of the sureties to such undertaking that it is given for the purpose of and to induce a breach of trust and for the purpose of protecting the wrongdoer from loss that may flow from such breach of trust.

Was the turning over of this money by the bank "lawful"? If it was not, then section 1960, C. C., is controlling. Section 1271, C. C., says that is not lawful which is:

"(1) Contrary to * * * express * * * law;

"(2) Contrary to the policy of express law, though not expressly prohibited; or,

"(3) Otherwise contrary to good morals.

Section 1618, C. C., provides that:

"A trustee may not use or deal with the trust property * * * for any other purpose unconnected with the trust."

See Coventry v. Barton, 17 Johns. (N. Y.) 142, 8 Am. Dec. 376.

Even if this case were not ruled by the provisions of sections 1271 and 1960, C. C., yet it certainly is by decisions that do not rest upon express statutes, but which announce the law that was intended to be made statutory by section 1960, C. C. An interesting case is that of Ives v. Jones, 25 N. C. 538, 40 Am. Dec. 421. A reading of that case and the note following same would seem to disclose that the controlling distinction recognized, where no actually criminal means or motive was present, is the absence of knowledge by the wrongdoer, plaintiff in this case, that the act which was to be indemnified against was wrongful to a third party. An instructive decision is that of Rice v. Nat. Bk., 98 Mo. App. 696, 73 S. W. 930, where a bond was held void, and where, in speaking of certain cases where the bonds had been held valid, the court said:

"But in those cases, and running through all others which we have examined, is the proviso, directly expressed, or else plainly implied, that the party doing the illegal act must have been an innocent party. He must not have been a willful participator in the wrong. In Stone v. Hooker, 9 Cow. [N. Y] 154, the court said that: 'The distinction taken between promises of indemnity that are and those which are not void is this: If the act directed or agreed to be done is known at the time to be a trespass an express promise to indemnify would be illegal and void, but if it was not known at the time to be a trespass the promise of indemnity is a good and valid promise.' See, also, Torpy v. Johnson, 43 Neb. 882, 62 N. W. 253."

An instructive note, though relating to "Indemnity to Sheriff," will be found in 86 Am. St. Rep. 554, where will be found quoted the general doctrine as laid down in 2 Freeman on Executions, § 275a, as follows:

"It must be remembered, in considering all contracts of indemnity, however expressed, that the law will not tolerate any agreement having for its object the commission of a known wrong. Hence it is essential to the validity of every bond or other agree-

ment for indemnity that there was no doubt respecting the validity of the act in question, for if the parties knew, or were chargeable with knowledge, that it was criminal or unlawful, or necessarily constituted a trespass or an invasion of the just rights of another, there can be no contract, whether expressed or implied, that the agent shall by his principal be indemnified for doing such act."